CHARLES N. BLACKMORE, *et al.*, *against* THE BANK OF THE STATE.

ERROR *to Independence Circuit Court.*

The Legislature, previous to December, 1839, had made no provision by which the Circuit Judges might temporarily exchange circuits. The provision in the act of 7th Nov., 1836, concerning circuit courts, "that nothing in this act shall be so construed, as to prevent the Judges of the several circuits from interchanging ridings," was repealed by the Revised Statutes.

Consequently, in December, 1839, the Judges could not interchange circuits. All proceedings had in one circuit before the judge of another, were *coram non judice.*

This was an action of debt. The original process was returnable to the December term, 1839, of Independence Circuit Court, at which time, as appeared by the record, the suit was tried and determined by the Hon. Joseph M. Hoge, Judge of the fourth judicial circuit, who had interchanged ridings with the Hon. Lewis B. Tully, Judge of the third judicial circuit, in which latter circuit the county of Independence is included.

FOWLER, for plaintiff in error:

The proceedings and judgment had in the court, or pretended court below, are *coram non judice,* and void. The Constitution of the State declares that "the State shall be divided into convenient circuits, each to consist of not less than five, nor more than seven counties contiguous to each other, for *each of which a Judge shall be elected,* who, during his continuance in office, shall reside and be a conservator of [the peace, within the circuit for which he shall] have been elected." See Art. VI., sec. 4. The Judges of the Circuit Court shall be elected for the term of four years from the date of their commissions, by joint vote of both houses of the General Assembly, a majority of the whole number, in joint vote, being necessary to a choice. See Const., Art. 11, sec. 7. "Judges of the Circuit Courts may temporarily exchange circuits, or hold courts for each other, *under such regulations as may be pointed out by law." Ib., sec.* 12. By the first clause above referred to, in the Constitution, that *a Judge*

*shall be elected for each circuit*, &c., in the absence of any other qualifying provision, it is contended that no other Judge than the one *specially elected*, for a *particular circuit*, could exercise properly judicial authority therein. The expression or mandate to the Legislature, that *they shall elect a Judge to each circuit*, &c., is a positive exclusion of the exercise of authority by any other Judge within that particular circuit. Even in the construction of ordinary acts of Assembly, the doctrine of *"exproprio unius, exclusio alterius est,"* would properly apply to such a clause. Much more would it apply to the construction of a constitution, which is a limitation of power, or a grant of power in derogation of the innate sovereignty of the people.

Independent of the general rule of construction above contended for, the intention of the framers of the Constitution is apparent from the clause quoted above from the 12th section; and admitting that the context were not explicit, if it is enough to arrive at the *intention* of the makers satisfactorily, *that intention* becomes a sure guide, and must be legally regarded, in arriving at a correct construction of the meaning of the clause. The subsequent clause, then, which says that they "may temporarily exchange circuits," &c., "under such regulations as may be pointed out by law," shows clearly, and, in the opinion of counsel, conclusively, that the framers of the Constitution intended to and did limit absolutely *each* Judge to the circuit for which he was elected, unless the General Assembly should, "by law," prescribe under what "regulations" they might exchange circuits or hold courts for each other.

That the General Assembly have power to make provision or "regulations" for exchange of circuits, &c., is broadly admitted; but until they do so, the power to exchange is prohibited by the Constitution. Have the General Assembly made such a provision "by law?"

Prior to, and at the time of, the rendition of the judgment in this case, it is denied that any legislation whatever, under the Constitution, or otherwise, (both of which modes have been frequent), existed upon the subject of exchange of circuits.

At the first session of the first General Assembly, under the Constitution, an Act was passed and approved, on the 29th of October, 1836, dividing the State into judicial circuits. This act divides the

whole State into six judicial circuits, and places the said county of Independence in the *third* judicial circuit; in which circuit it still was at the time this judgment was rendered. *See pamphlet Acts of* 1836, p. 138. At the same session an act was passed declaring that "the said Circuit Court shall be held by one Judge, who shall have been elected or appointed and qualified in manner and form as prescribed by the Constitution of this State," &c., &c., and enumerating the powers which the said Court should exercise, &c., without any clause or enactment whatever *pointing out* "by law" regulations for the interchange of circuits between the Judges, or for holding courts for each other—thus leaving the matter where the Constitution left it. This statute, however, contains a proviso "that nothing in this Act shall be so construed as to prevent the Judges of the several circuits from interchanging their riding, as is specified in the Constitution of this State." This proviso cannot give the power of exchange contemplated by the Constitution; and there being no preceding clause which it can be brought to bear upon or qualify, it must be wholly inoperative and a dead letter upon the statute book, unless it be construed as a declaration simply that, in this particular, the Legislature did not intend to modify or repeal the Constitution! *See pamphlet Acts of* 1836, *p.* 181, *et seq.* There seems to have been no other legislation bearing upon this question, prior to the date of the judgment in this case. By the journals of the General Assembly, which are a part of the public records of the State, it appears that, on the 20th October, A. D. 1836, Lewis B. Tully was elected Judge of the said *third* judicial circuit, and the said Joseph M. Hoge, Judge of the *fourth* judicial circuit. See Senate journals p. 132. The record in this case, at the date of the judgment shows that said Tully was then still Judge of the said third judicial circuit, and the said Joseph M. Hoge, otherwise called Joseph Montgomery Hoge, was still then Judge of the *fourth* circuit; and holding the said Circuit Court of Independence county in the *third* circuit, by interchange of ridings with the said Lewis B. Tully, the proper Judge. Then if the above premises be correct, the said Honorable Joseph Montgomery Hoge, in attempting to exercise judicial functions in the third circuit, was usurping power not conferred upon him by the laws; and his acts in

this case are illegal and void.    And the judgment should be annulled if not already void.

DICKINSON, J., delivered the opinion of the court:

The Constitution prescribes the mode by which cases in which the Judge of the Circuit Court was incompetent to sit, shall be tried, by the appointment of special judges for that purpose; leaving to the Legislature, at the same time, power to make provision, if they deem it proper, by which the different Judges might temporarily exchange circuits with each other. This power never was exercised by the Legislature; leaving the objects to be carried out by the Executive in the appointment of special Judges, and sanctioning that measure by making appropriations for their compensation.

The provision in the act of 7th November, 1836, regulating the terms and prescribing the powers of the Circuits of the State of Arkansas, " That nothing in this act shall be so construed, as to prevent the Judges of the several Circuits from interchanging their ridings, as is specified in the Constitution of this State," was, previous to the trial of this case, expressly repealed in the 28th section Rev. St., 698, by title, " except so much thereof as has relation to fixing the time of holding the Circuit Court." Consequently, the Circuit Judges, in December, 1839, had no power or authority to preside in any Courts other than those comprised in their respective circuits.

The proceedings, therefore, of this case, so far as the same were had before Judge Hoge, were *coram non judice*, and utterly null and void. As, however, the process was issued by a duly authorized officer, the case now stands for adjudication as it did at the return term thereof.

There being no case before us of a competent Court, the writ of error is dismissed.